

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
08 APR -4 PM 5:06
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY:_____ DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | Magistrate Case No. |
| ) | |
| Plaintiff, ) | |
| ) | COMPLAINT FOR VIOLATION OF: |
| v. ) | |
| ) | Title 8 U.S.C., Sec. 1324 (a)(2)(B)(iii) |
| **Luis Marcelo RODRIGUEZ-Castaneda,** ) | |
| **Fidel VASQUEZ-Villalobos** ) | Bringing in Illegal Aliens Without |
| ) | Presentation |
| ) | |
| Defendant(s) ) | **'08 MJ 1051 AJB** |
| ) | |

The undersigned complainant, being duly sworn, states:

On or about **April 3, 2008,** within the Southern District of California, defendant **Luis Marcelo RODRIGUEZ-Castaneda, Fidel VASQUEZ-VILLALOBOS** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Juan Guillermo GUZMAN-GONZALEZ, Emmanuel PEREZ-Luna, Juan RODRIGUEZ-Perez,** had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

_Andrew Kahl SPA_
SIGNATURE OF COMPLAINANT
Andrew Kahl
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **4th** DAY OF **APRIL 2008.**

_signature_
Anthony J. Battaglia
UNITED STATES MAGISTRATE JUDGE



CONTINUATION OF COMPLAINT:
Luis Marcelo RODRIGUEZ-Castaneda
Fidel VASQUEZ-Villalobos

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Juan Guillermo GUZMAN-GONZALEZ, Emmanuel PEREZ-Luna, and Juan RODRIGUEZ-Perez** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On April 3, 2008, at approximately 1:00 a.m., Border Patrol agent J. Alvarado observed a 1999 Ford 350 pickup truck, blocking one of the lanes on the west bound side of Interstate 8, near Boulevard California. The vehicle was parked near highway call box 667. Agents requested California Highway Patrol respond to have the vehicle towed out of the flow of traffic. California Highway Patrol responded and had the vehicle towed.

Agent Alavardo observed footprints, commonly referred to as "sign", moving away from the vehicle. Agent Alvarado approximated the group size to be 15 people. Agent Alvarado requested more units to respond and assist him in locating the group. Agents began to track the sign of the group away from the abandoned vehicle. Field Operations Supervisor F. Carrillo also responded to the area with a night vision thermal scope and began to scan the immediate area. Agent Carrillo observed what appeared to be a person hiding in a large rock pile near the location and advised other agents in the area.

At approximately 5:00 am, Border Patrol Agent G. Pettigrew responded to the area and after a lengthy search, encountered 15 individuals attempting to conceal themselves throughout the rock pile. Agent Pettigrew identified himself as a United States Border Patrol Agent and questioned the individuals as to their citizenship. 14 of the individuals stated that they were citizens and nationals of Mexico and that they did not have any immigration documents that would allow them to enter or remain in the United States legally. The fifteenth subject stated that he was a citizen and national of Guatemala and that he did not have any immigration documents that would allow him to enter or remain in the United States legally.

One of the individuals, later identified as RAMIREZ-Cutzan, Guillermo, stated that he was a citizen and national of Guatemala. When asked if he had any immigration documents that would allow him to enter or remain in the United States, he said "No." All 15 individuals were arrested and transported to the Boulevard Station for further processing.

All fifteen subjects biographical information, photographs and fingerprints were taken and submitted. At approximately 6:10 a.m., official record checks for one of the individuals, Luis Marcelo RODRIGUEZ-Casteneda, revealed a lookout alert that had been placed by Smuggling Interdiction Group (SIG) Senior Patrol Agent A. Kahl. Supervisory Border Patrol Agent J. Delatorre left a voice message for Agent Kahl at 6:14 a.m. At 8:00 a.m., Agent Kahl contacted SBPA Delatorre and requested that the entire group be transported to Chula Vista Station for further processing and interviews. The group of illegal aliens arrived at Chula Vista Station at approximately 10:30 a.m. RODRIGUEZ arrived at approximately 11:30 a.m. Agent Kahl conducted a videotaped post Miranda interview with RODRIGUEZ starting at 12:05 p.m.

<a>
</a>
<p>
</p>



**Statement of Defendant #1 Luis Marcelo RODRIGUEZ-Casteneda:**

Prior to his interview, SPA Kahl read the defendant his Miranda rights, in the Spanish language and asked if he had understood those rights. The defendant stated that he understood his rights, and was willing to answer questions without the presence of an attorney.

The defendant said that they crossed via El Cerro de la Miel (Honey Hill), walked to Interstate 8, crossed the highway, and then waited for the load vehicle to pick them up. He said that the vehicle, an orange Ford diesel pick-up truck, arrived, and that he and El Chapo told them all to load into the truck. The defendant stated that the driver was a new guy, who was white, had a cap on and was slightly shorter and skinnier than himself. He stated that this guy didn't seem to speak much Spanish. The defendant said that about five of the smuggled aliens got in the cab of the pick-up, and the rest climbed in the bed. He stated that he and Chapo also got in the bed.

After driving a short distance, the truck broke down, and they stopped on the side of the highway. The defendant said that the truck was leaking oil. The driver told them all to get out and run into the bushes. He gestured to the defendant and Chapo to take the group to a signpost up ahead and hide them there. The defendant supposed that they were to wait there for another load vehicle to come and pick them up.

The defendant said that the driver apparently ran away because he did not appear to have been detained with them. When asked, the defendant said that he had been aware that the people he was smuggling did not have documents allowing them to enter the United States legally.

**Statement of Defendant #2 Fidel VAZQUEZ-Villalobos:**

The defendant provided Agent Kahl with a videotaped post-Miranda statement in the Spanish language, which is summarized as follows:

Prior to his interview, SPA Kahl read the defendant his Miranda rights, in the Spanish language and asked if he had understood those rights. The defendant said that he understood his rights, and was willing to answer questions without the presence of an attorney.

The defendant stated that he is an undocumented Mexican national and that he is illegally present in the United States. He stated that he does not have, nor has he ever had, any immigration documents allowing him to enter or be in the United States legally. The defendant said that he was born on 03/05/85 in Tepic, Nayarit, Mexico. He stated that he currently lives in Mazatlan, Sinaloa, Mexico.

The defendant denied being involved in the smuggling of undocumented aliens. The defendant stated that he did know defendant RODRIGUEZ, whom he stated was his former brother-in-law from Mazatlan, Sinaloa. The defendant further denied having come to Tijuana from Mazatlan together with RODRIGUEZ, and then stated that RODRIGUEZ was smuggling him into the United States.

The defendant said that his final destination in the United States was to have been Los Angeles, California where his cousin lives. He stated that he was to have been charged a $2,600.00 (USD) smuggling fee, he also stated that he did not have a phone number or contact information for his cousin in Los Angeles. He stated that he made arrangements with an unknown smuggler whom he met at the bus station in Tijuana.

The defendant then recanted his previous statement that RODRIGUEZ had been smuggling him, and stated that there had been no foot guide in the group and that they had all simply been crossing together. The defendant stated that he was simply following the other people.

When it was pointed out that this was inconsistent with his prior statement, that he was to have been charged a $2600.00 (USD) smuggling fee in order to be smuggled to Los Angeles, the defendant offered the following statement:

The defendant said that he arrived in Tijuana, traveling alone, on Monday (03/31/08) via bus. He stated that he had not traveled with his former brother-in-law, RODRIGUEZ, and that he had no knowledge of him being in Tijuana, or that he was also trying to cross into the United States.

The defendant initially stated that he met an alien smuggler at the bus station in Tijuana, who offered to smuggle him into the United States. When pressed for details, the defendant said that he had in fact taken a taxi from the bus station and that the taxi driver made arrangements for him to be smuggled into the U.S., with an unknown smuggler. He stated that the Taxi driver introduced him to a fat, unidentified alien smuggler, who took him to Jacume, where he happened to run into "Marcelo" his former brother-in-law (defendant #1 RODRIGUEZ).

The defendant said that they were taken to a house in Jacume, to wait to be crossed. The defendant said that it was simple chance that "Marcelo" (defendant #1 RODRIGUEZ) happened to have made arrangements to be smuggled via the same unidentified fat alien smuggler, and was waiting to be smuggled there in the same house in Jacume.

The defendant stated that the smugglers took them to the border fence, and pointed to a highway on the United States side which was visible from the fence. The defendant stated that there were no foot guides in the group, and that they were all smuggled aliens. He said that the smugglers told them to all walk together to the highway where they were to be picked up by a load vehicle. The defendant said they were to wait at a particular sign on the highway.

The defendant said that they all crossed into the United States and walked to the highway, where they waited to be picked up. He stated that nobody in the group was in communication with the smugglers, via phone or radio. After a while, the defendant said that a large 4 door vehicle arrived to pick them up. He said that he and "Marcelo" and the others all got into the vehicle, and they drove off. The defendant said that he did not see the driver and could not describe him. After a short time, the truck stopped and the driver told them all to run off into the hills. The defendant stated that they ran away, got lost, and were later arrested by the Border Patrol.

## MATERIAL WITNESSES STATEMENTS:

Material witnesses **Juan Guillermo GUZMAN-GONZALEZ, Emmanuel PEREZ-Luna,** and **Juan RODRIGUEZ-Perez** agree in summary that they are citizens and nationals of Mexico illegally present in the United States. They admit to entering the United States illegally. The material witnesses stated that they were to pay up to $3,000 (US) to be smuggled into the United States. All three material witnesses were shown a photographic line up and were able to identify defendant #1 **Luis Marcelo RODRIGUEZ-Castaneda** as one of the foot-guides who guided their group and defendant #2 **Fidel VASQUEZ-Villalobos** as one of the foot-guides who also guided their group.